(54 South. 828.)

No. 18,355.

CREAGH v. NEW ORLEANS RY. & LIGHT CO.

(March 13, 1911. Rehearing Denied April 10, 1911.)

*(Syllabus by the Court.)*

1. Issues of Fact.
The issues are of facts.

2. Preponderance of Evidence—Review.
The preponderance of the evidence is not with the plaintiff.

3. Street Railroads (§ 114*)—Injuries to Children—Negligence—Evidence.
The witnesses were not always consistent as witnesses.
Their statements out of court, as testified to by another witness, were in conflict with statements as witnesses.

The account given of the accident does not with reasonable certainty show how it was that the accident happened, whether by the negligence of defendant or the imprudence of the boy.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 114.*]

*(Additional Syllabus by Editorial Staff.)*

4. Parent and Child (§ 7*)—Action—Representation—Natural Tutrix—Minors.
Under the rule that any natural or artificial person may sue, a widow was not precluded from suing for injuries to her minor son because she had not qualified as natural tutrix at the time the suit was brought.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 80–99; Dec. Dig. § 7.*]

5. Parent and Child (§ 7*)—Injuries to Child—Action by Parent—Minors.
Where a widow had paid various sums, and had rendered herself liable for other sums on account of injuries to her minor son, and had cared for him during his illness, she was entitled to sue to recover the same.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 80–99; Dec. Dig. § 7.*]

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by Philomena Creagh, natural tutrix, against the New Orleans Railway & Light Company. Judgment for plaintiff, and defendant appeals. Reversed.

Hall, Monroe & Lemann, for appellant. Louis R. Hoover, for appellee.

BREAUX, C. J. This action was brought by plaintiff, widow by first marriage of George Wegman, for damages for alleged personal injuries suffered by Jules Wegman, her son, aged about eight years.

The amount sued for is $10,533.50, damages for alleged injuries received and expenses she alleges were incurred during his illness while suffering from the injury.

Plaintiff's statement further is that at about 6:20 o'clock on the evening of the 18th of January, 1909, her young son was knocked down through the negligence and carelessness of the motorman of one of defendant's cars, crushing the elbow of his left arm and

bruising two fingers, rendering it necessary to amputate the fingers.

She located the accident just below the intersection of St. Mary and Carondelet streets, and states that the car had stopped because of the blowing out of a fuse, and that the explosion and the flaring light attracted the children near.

It seems that in a few moments the blown-out fuse was repaired and the car again started on its way to Canal street.

To quote her complaint literally regarding her son, she alleged that "he was standing alongside the railroad track in front of the car in plain sight of the motorman and only a few feet from the car."

The defendant interposed an exception of no cause of action, which was overruled.

It then answered in general terms denying all liability, and pleaded in the answer that plaintiff had no right to stand in judgment; that plaintiff's claim was prescribed.

The defendant, however, admitted in answer that plaintiff's son did receive injury by coming in contact with its car, but denied that the injury could be laid at its door, for, as it alleged, no part of it was occasioned by the least negligence on the part of any of its employés or on account of anything not in order connected with its road and car.

The defendant alleged that the boy impulsively left the sidewalk on Carondelet between St. Mary and Felicity streets and ran toward the car, striking it on the side, fell, and that his outstretched arm came in contact with the right hind wheel of the car, and thereby the injury was occasioned.

The other issue regarding plaintiff's want of authority, also raised in the answer, will be considered later by us near the close of our decision.

The jury rendered a verdict in favor of plaintiff personally for the sum of $533.50, and the sum of $5,000 in her favor as tutrix.

Taking up for decision the demand for damages, the questions in that connection are nearly all of facts.

There were two witnesses present who swore that plaintiff's son was in front of the car. Precisely where the boy was it is very difficult to determine from the testimony of these two witnesses.

The first of the two witnesses, Henry Knight, was not very clear in his statements, and was not entirely consistent in his answers.

He stated that he was walking on the right side of the street, the same side on which plaintiff's son was as relates to the car, as we gather from the testimony.

This witness did not succeed in making it appear with any degree of certainty where the boy was when the car started.

In answer to the question, "Where was the little boy standing when the car started?" his answer was, as numbered by us: (1) "In front of the car; (2) very near the front; (3) a least bit to the right front track; (4) probably four or five feet from the car."

All of this in one answer.

The first part of the answer informs us that he was standing in front of the car; the second, he was not on the front of the car; the next, he was just beyond the car; and, lastly, he was five feet from the car, away from all danger.

At that distance, five feet, a collision was a matter of impossibility, unless the boy fell or was pushed in some way against the front part of the car, or stepped against the car.

Of this there is not the least evidence.

A futile attempt was made by learned counsel to confine the testimony of this witness to one spot at which the boy was standing.

As to what took place after the impact:

While in this respect also he, the witness who testified as above as to where the boy was standing, was not absolutely certain,

this witness did decidedly better than in his first answer above noted.

He was not positively certain, and ended by saying that the boy must have been struck by the bumper of the car.

At first the fender and the steps were mentioned; at last, however, it was the bumper that struck him, according to this witness.

There is no question but that the witness thought that the bumper was that part of the car which struck the boy.

By the effect of the blow, according to the testimony of this witness, the boy was made to whirl around, turn, and fall, face downward, as we understand, with his left arm extending over the rear rail when the car ran over him.

This is not the ordinary effect of an impact with the front of a car.

It is reasonable to conclude that he, if he had been struck in front or near the front, would have fallen under the car or near the side in front or near the front.

We have followed this witness as well as we could. His statements have not convinced us. They are not consistent, and do not prove with certainty how the boy was struck.

According to this witness, the boy was standing in front of the car or on its side.

Had he been in front, he would have fallen under the car, and would have been crushed. If on the side, then it is probable that he would have fallen lengthwise along the rail.

Of this there is no evidence.

The statement of the witness that he whirled around and fell under the rear wheel does not appear reasonable.

A number of boys were playing "catcher"; that is, running each other down in the street. The movements of these boys may have escaped the attention of this witness.

In the darkness of the night evidently it is not always an easy matter to see in what direction the little boys are running after one another.

At any rate, the evidence does not satisfy us that the casualty happened as related by this witness.

The other witness, John Joseph Fout, also, who saw the accident, is not entirely consistent.

He says that, when the car struck the boy, he was standing about 60 feet from St. Mary street. At another time he says that the boy fell about the middle of the block between Felicity and St. Mary streets. He also states that he was standing at one time at the corner of Felicity street about 60 feet from the place that the blow was struck.

The witness is not a good judge of distance. In fixing the distance between Felicity and St. Mary streets, he states some 80 feet; other testimony shows that it is much greater distance.

He also says that the boy was standing about 3½ feet from the rail.

That again would place the boy out of the danger line unless something happened which brought on the impact.

He also heard no gong or signal.

This witness was on the left-hand side of Carondelet street, and not on the side on which the boy fell. He states that he lost sight of the boy after the car had passed a little distance.

This witness also states that it was very dark on St. Mary street at the moment of the accident.

This is contradicted by other witnesses.

He says that the boy did not run from the sidewalk and fall near the car, and that he made no such statement to any one; that the car was not running fast.

The other witness, the first witness, whose testimony we reviewed above, states that it was running very fast; that it started in a great hurry to make up for lost time.

Although this second witness in order of examination of witnesses was on the opposite side of the street, not in a perpendicular

line to where the boy was standing, he testified that in falling the car threw the child down and twisted his arm, and that the rear wheel went over him; that he could not see after the car had passed him; that he was on the left side; the little fellow was on the right-hand side.

At that time he was at the corner of Felicity street on the wood side and the boy was on the river side of the car.

These witnesses are in addition contradicted.

It is true that the testimony of those by whom they are contradicted (the employés of a corporation) is not always considered the best evidence.

It remains that these witnesses are men who have been in the service of the company some time; certainly are not entirely devoid of sympathy; would not, let us hope, deliberately state a falsehood, or deliberately make up a tale to injure a boy and his mother. While human nature is weak and is inclined to serve its own interest, it will not always go to the extent of falsifying for the purpose of serving the interest by which it is employed.

The claim agent of the defendant company in charge of investigation of accidents, so that, as he states, the company may be informed of the facts, and, as he states "to compromise the case and pay just debts," swore that the instructions given to the men are "to ascertain from the witnesses how the accident occurred, and to report correctly the statements they give without fear or favor."

The man who made the investigation was Charles Stuart. He had been an employé of the road for a number of years as a conductor, and, when a vacancy occurred in the office, Stuart was selected as being competent and reliable. He had served at the date of the accident as investigating agent of the company about two years and a half.

This claim agent of the defendant company swore that he had gone up to Carondelet street between St. Mary and Felicity streets and measured it; that St. Mary street to the property line of Felicity street is 188 feet and 9 inches, a much less number of feet than the last witness whose testimony was reviewed above imagined.

Now, this investigating agent of the defendant company after the accident interviewed the witness, Knight, whose evidence was considered above; he swore that the witness said to him before reaching the car that he saw "the motorman and conductor jump on the car, and without any warning start ahead at a swift rate of speed." Just as the car had traveled about a car length, he saw the boy run from the sidewalk on the river side of the street toward the car, and that the car at the right side, just behind the right front step, struck the boy and knocked him under the right hind wheel; that the car continued and did not stop; that he saw several boys gathered around at the time that the car was stopped.

This witness also swore that he interviewed the other witness for plaintiff, Fout, whose evidence was also referred to above; that he also made a statement, and that this witness said to him that at the time of the accident he was standing on the uptown wood side of Felicity street; that he noticed four little boys playing around a large tree which is on the sidewalk between St. Mary and Felicity streets near the corner of Felicity and about 90 feet from where he was standing. He saw a down-bound Carondelet car at St. Mary street, and that just as the car reached near where the children were he saw one of the little boys run into the street from the sidewalk, apparently after one of the other boys as if playing "catcher," suddenly stumble, and fall toward the car with his hands stretched out as the car was passing. He yelled to the crew and also whistled twice, but as the vestibule doors were closed, except the one at the rear end

of the car, he supposed that the motorman and conductor did not hear' him. He ran over to the boy and took him home.

These statements were taken down after he had interviewed these witnesses. They were not signed by the witnesses, as he says that it is not at all usual for witnesses to sign statements.

The motorman and conductor do not corroborate the witnesses for plaintiff as relates to the "giving the bell," to use an expression of the car people, or sounding the gong. They swore that the conductor rang the bell and the motorman sounded the gong. They did not see the boys, and did not know of the accident at the time.

The evidence for plaintiff is not convincing; witnesses having contradicted themselves to an extent rendering it impossible to render a judgment thereon.

[3] The weight of the testimony is not with the plaintiff.

Only another point remains for decision.

[4] We do not think that we should maintain defendant's exception and dismiss the suit on the ground that plaintiff had no right to stand in judgment as she had not been qualified as natural tutrix at the time suit was brought.

The general rule of law is that any person, natural or artificial, may sue in the courts of the country.

[5] Plaintiff, having paid an amount, and having rendered herself liable for another amount to have the boy taken care of during his illness, could sue to recover. She had a right to appear in court.

For reasons stated, it is ordered, adjudged, and decreed that the verdict and judgment appealed from are avoided, annulled, and reversed.

It is now ordered, adjudged, and decreed that the judgment of the district court be annulled, avoided, and reversed at costs of plaintiff in both courts.